UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **Unfortunate Son, Ltd.** | ) | **CASE NO. 1:05 CV 1694** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **William Wilkins,** | ) | |
| **Bryan K. Hairston, and** | ) | **Memorandum of Opinion and Order** |
| **John Uzelac.** | ) | |
| | ) | |
| **Defendants.** | ) | |

### INTRODUCTION

This matter is before the Court upon the Motion of all Defendants to Dismiss the Amended Complaint. (Doc. 21). This case arises out of a tax on plaintiff and plaintiff's shareholder for the use of a yacht in Ohio. For the reasons that follow, defendants' motion is GRANTED.

### FACTS

Plaintiff Unfortunate Son, Ltd. ("Unfortunate Son") is a British Virgin Islands International Business Corporation with its principal place of business in the British Virgin

1

Islands. (Am. Compl. ¶ 1). The defendants are William Wilkins, the Tax Commissioner of the Ohio Department of Taxation, Bryan Hairston, the Administrator of the Sales and Use Tax Division of the Ohio Department of Taxation, and John Uzelac, a Tax Auditor Agent for the Ohio Department of Taxation. (Am. Compl. ¶ 2).

Unfortunate Son owns a pleasure yacht which is licensed to cruise United States waters. (Am. Compl. ¶ 1). Unfortunate Son does not conduct business, own property, have offices, or employ any persons in Ohio. (Am. Compl. ¶ 10). The yacht cruised the waters of Michigan, Ohio, Pennsylvania, New York and Canada in the summer of 2004. (Am. Compl. ¶ 8). No repairs, maintenance or service occurred while the yacht was in Ohio. (Am. Compl. ¶ 9). The yacht was used exclusively for pleasure and was not in Ohio for more than 60 days. (Am. Compl. ¶¶ 8, 11).

Unfortunate Son first filed a one count complaint alleging that "Defendants seek to assess and levy the excise tax provided for in R.C. § 5741.02 upon the Plaintiff's shareholder and collect a tax from Plaintiff's shareholder in an amount equal to six (6%) percent of the value of the pleasure yacht owned by the Plaintiff." (Compl. ¶ 12). This count is repeated in Unfortunate Son's amended complaint. Unfortunate Son's shareholder, Mark T. Small, "has intermittently lived and worked in the state of Ohio." (Am. Compl. ¶ 1). Unfortunate Son alleges that its "shareholder will seek indemnification from Plaintiff" if he is taxed for his use of the yacht. (Am. Compl. ¶ 12). Unfortunate Son believes that any attempt to tax Mr. Small for the use of the yacht would violate Article I, Sections 8 and 10 of the Constitution. (Am. Compl. ¶ 13).

The State of Ohio then attempted to assess Unfortunate Son for the use of the yacht in Ohio. (Doc. 15, Att. 2, Ex. B; Am. Compl. ¶ 16). In a letter to "Unfortunate Son, 8620 Tyler

Blvd., Mentor, OH 44060-4348," the Ohio Department of Taxation assessed a use tax of $113,586.17 including penalties and interest. (Doc. 15, Att. 2, Ex. B; Am. Compl. ¶ 16). Cleveland Construction, Inc., the company that resides at the Mentor address, returned the notice of assessment with the explanation that Unfortunate Son does not reside there. (Am. Compl. ¶ 17). Unfortunate Son then filed its amended complaint which added a second count based on the attempted assessment. (Am. Compl. ¶ 18).

Unfortunate Son seeks a declaration that the Ohio use tax is unconstitutional as applied to it, its shareholder and the yacht, and an injunction prohibiting the defendants from assessing and/or imposing the tax.

**DISCUSSION**

Defendants have filed a Motion to Dismiss the Amended Complaint pursuant to Rules 12(b)(1), 12(b)(3), 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure.

Defendants allege that Unfortunate Son's claims are not ripe. When Unfortunate Son filed its complaint, Ohio had not yet assessed a use tax against anyone. The only claim at that time was that "Defendants *seek* to assess and levy" a use tax upon the shareholder, Mr. Small. Unfortunate Son alleged that should such a tax issue, it might be called upon to indemnify its shareholder, or if the tax is not paid, the state might institute execution proceedings against its yacht. Defendants filed a first motion to dismiss, and Unfortunate Son responded, in part, that defendants should "assess the use tax on the person or entity that actually holds the ownership rights subject to the tax." Ohio responded by assessing a tax on Unfortunate Son, which resulted

in the first amended complaint.[1]  However, when Unfortunate Son added a count relating to the actual assessment against Unfortunate Son, it did not remove its first count related to a potential assessment against its shareholder.  Defendants argue in their second motion that these claims are not ripe.

Limiting jurisdiction to ripe claims ensures that "courts decide only existing, substantial controversies, not hypothetical questions or possibilities." *Norton v. Ashcroft*, 298 F.3d 547, 554 (6th Cir. 2002).  Courts must be particularly wary of unripe claims when a decision would require an abstract pronouncement on the constitutionality of state action.  *Poe v. Ullman*, 367 U.S. 497, 503-04 (1961).   A claim is not ripe unless the issues are fit for judicial decision and the parties would face hardship if the court does not consider the dispute.  *Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters, Local No. 1224 v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir. 2003).  Both fitness for decision and hardship must be shown for a case to be ripe.  *Id.*

The shareholder claim is not fit for judicial decision.  Now that an assessment has issued, Unfortunate Son argues that it "does not have to wait for Ohio's administrative authorities to uphold the assessment.  The assessment of the use tax is enough to make this case ripe for adjudication."  This may be true with respect to the new claim challenging the assessment of the use tax against Unfortunate Son, however, the original claim is based on a potential assessment against the shareholder, an event which is unlikely to come to pass.[2]  *Norton*, 298 F.3d at 554.

---

[1]  In response to the first motion to dismiss, Unfortunate Son alleged that defendants had issued a letter threatening its shareholder with an assessment in August of 2005.  The tax was assessed against Unfortunate Son in October of 2005.

[2]  Some courts have described ripeness as a three-part test, with a third element of the "likelihood that the harm alleged by plaintiffs

Even if defendants do change course and impose a tax on the shareholder, there are still further contingencies that must occur before *Unfortunate Son* is injured.  Unfortunate Son's alleged injuries all stem from actions that third parties might take in hypothetical litigation.  These are not facts which might be developed during litigation.  These are events which have not occurred and appear unlikely to occur.

Unfortunate Son also has not demonstrated hardship with respect to the shareholder claim.  Until the state imposes a tax, there is no danger that the shareholder will seek indemnity or that the state will institute execution proceedings on Unfortunate Son's property as a result of the shareholder's nonpayment.  This also differs from cases where the potential enforcement of a criminal or civil penalty causes an independent injury.  *Compare Abbott Labs v. Gardner*, 387 U.S. 136, 152-53 (1967) (finding a ripe claim when compliance required massive expenditures), *with Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 165 (1967) (finding a claim unripe when noncompliance would result in "a determination that can be promptly challenged through an administrative procedure, which in turn is reviewable by a court").  *See also Nat'l Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 285-86 (6th Cir. 1997) (explaining that "[t]he manufacturers and dealers herein are faced with significant changes in the day-to-day operation of their businesses in order to comply with a statutory provision").  In fact, finding the shareholder claim unripe will not dely the ultimate adjudication of plaintiff's claims.  Unfortunate Son has been

---

will ever come to pass." *E.g., Norton*, 298 F.3d at 554; *Nat'l Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997).  Whether this is a third element of the ripeness test or a consideration relevant to the two traditional elements of the test, the likelihood that the harm will occur is an essential part of the ripeness inquiry.

5

assessed for the use tax, faces the same potential damages, and can raise the same constitutional objections.

Finally, the policy reasons for avoiding disputes that are not ripe are particularly pertinent here. The Court has before it an actual dispute regarding a tax that has been assessed directly against Unfortunate Son. As will be discussed below, principles of comity and the considered congressional judgment that federal courts should not interfere in issues of state taxation require that this actual, ripe dispute be resolved in the Ohio state system.

Defendants also argue that this lawsuit is barred by the Tax Injunction Act, which expressly limits the jurisdiction of this Court as follows:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 U.S.C. § 1341. The Tax Injunction Act applies to claims for injunctive and declaratory relief. *California v. Grace Lutheran Church*, 457 U.S. 393, 411 (1982).

The goal of the Act was to "limit drastically federal district court jurisdiction to interfere with so important a local concern as the collection of taxes." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 522 (1981). Otherwise, federal lawsuits could be used as a tactic to obstruct or delay a state's tax administration procedures. *Id.* at 527; *Aluminum Co. of Am. v. Dep't of the Treasury*, 522 F.2d 1120, 1126 (6th Cir. 1975). Inherent in this legislation was the assumption that state courts are competent to decide matters of federal law, particularly where the federal issues are likely to turn on how state tax law is applied. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 103 (1981); *Rosewell*, 450 U.S. at 527.

Nonetheless, states must afford litigants "a plain, speedy and efficient remedy . . . in the

courts of such State." 28 U.S.C. § 1341.  Courts interpret the plain, speedy and efficient remedy exception narrowly.  *Grace Brethren*, 457 U.S. at 413; *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 544 (6th Cir. 2004).  The exception merely requires the state to provide parties adequate procedures to challenge a state tax.  *Rosewell*, 450 U.S. at 522.  In general, this requires a judicial determination of the constitutional issues.  *Id*. at 514; *Hedgepeth v. State of Tennessee*, 215 F.3d 608, 615 (6th Cir. 2000).  States may initially refer parties to a state administrative body as long as review is available before a state court.  *See Rosewell*, 450 U.S. at 508 & n.7 (approving an Illinois procedure that required exhaustion of administrative remedies).

The parties do not dispute that the use tax defendants have assessed against Unfortunate Son is a tax under the Tax Injunction Act.  Instead, Unfortunate Son claims that plain, speedy and efficient remedies are not available for its claims.  Unfortunate Son does not have a license to do business in Ohio.  Ohio Revised Code § 1703.29 prohibits a "foreign corporation which should have obtained [a] license [under section 1703.01 *et seq.* from] maintain[ing] any action in any court until it has obtained such license."  Thus, while Unfortunate Son concedes that an action in the Ohio court of common pleas under Ohio Revised Code § 2723.01 would satisfy the plain, speedy and efficient test,[3] it argues that its lack of a license prevents it from accessing this remedy.

However, Unfortunate Son is not barred from bringing a lawsuit in Ohio unless it "should have obtained" an Ohio license.  Ohio Rev. Code § 1703.29.  It has alleged that it does not conduct any business in Ohio or have any connection to Ohio, in which case it might not even be

---

[3]  *Citing Union Properties, Inc. v. Monroe*, 232 F.2d 884, 885 (6th Cir. 1956); *Kunkle v. Fulton County Bd. Of Comm'rs*, No. 90-3261, 1991 WL 1120 at *2 (6th Cir. Jan. 8, 1991).

required to obtain a license. Ohio Rev. Code §1703.02. In any event, Unfortunate Son is a sophisticated business entity fully capable of assessing whether or not it should obtain a license. It cannot rely on its failure to comply with Ohio law to avoid the application of the Tax Injunction Act. Because Unfortunate Son concedes that a plain, speedy and efficient remedy is available for all of its claims but for its refusal to obtain a license, the Tax Injunction Act bars it from bringing an action in federal court to challenge either the assessment against it or a threatened assessment against its shareholder.

Additionally, defendants point out that other procedures are available to Unfortunate Son. Taxpayers are allowed to challenge the determinations of the tax commissioner at the board of tax appeals. Ohio Rev. Code § 5717.02. Review is then available before the Ohio Supreme Court or Court of Appeals. Ohio Rev. Code § 5717.04. These procedures will allow Unfortunate Son to address its constitutional claims. *See SFA Folio Collections, Inc. v. Tracy*, 652 N.E.2d 693, 697 (Ohio 1995) (holding, on appeal from the board of tax appeals, that application of a use tax to an out-of-state corporation violated the Commerce Clause).

Unfortunate Son argues that a remedy available before a state administrative body is not plain, speedy and efficient. Unfortunate Son presents no authority for this proposition, but instead appears to complain that it differs from the "approved" procedures of Ohio Rev. Code § 2723.01. However, the existence of one acceptable procedure does not render all other procedures unacceptable. Neither the administrative procedure nor court review of those proceedings is alleged to be particularly complicated or unduly time-consuming. Unfortunate Son takes issue with the fact that a court of common pleas, which is not part of the review process under section 5717.04, cannot enter an injunction. This is a distinction without a

difference.  Under the procedure approved by the Supreme Court in *Rosewell*, a state can require the taxpayer to exhaust administrative remedies and pay the tax prior to initiating an action in any court.  *Rosewell*, 450 U.S .at 509.  The fact that the next stage of the taxation process in Ohio is an appellate court rather than a trial court arguably speeds the resolution of the taxpayer's claims.  *Cf. Hay v. Indiana Bd. of Tax Comm'rs*, 312 F.3d 876, 880 (7th Cir. 2002) (approving an Indiana procedure where appeals go to the Indiana Tax Court followed by the Indiana Supreme Court).   Accordingly, the procedures of Ohio Rev. Code § 5717.02 and Ohio Rev. Code § 5717.04 also provide for a "plain, speedy and efficient" remedy in Ohio.  Because the Court does not have jurisdiction over either of Unfortunate Son's claims, it will not address the parties' remaining arguments.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 12/19/05